## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

MARK BOLICH, JR. ,

     Plaintiff,

v.                                 Case No: 8:21-cv-886-CEH-AEP

NELNET SERVICING, LLC and
NELNET DIVERSIFIED
SOLUTIONS, LLC,

     Defendants.

_____

### ORDER

This cause comes before the Court on Defendants Nelnet Servicing, LLC and Nelnet Diversified Solutions, LLC's Motion for Summary Judgment (Doc. 79), Plaintiff Mark Bolich, Jr.'s Response in Opposition (Doc. 101), and Defendants' Reply (Doc. 104). In this Fair Credit Reporting Act ("FCRA") action, Plaintiff alleges that Defendants conducted an unreasonable investigation into his credit reporting dispute, which alleged that they furnished inaccurate or incomplete information regarding his student loan payment history to credit reporting agencies. Defendants seek summary judgment as to the sole remaining count of the Amended Complaint, Count V.

Upon review and consideration, and being fully advised in the premises, the Court will grant the motion for summary judgment because no reasonable factfinder could conclude that Defendants' reporting was inaccurate. As a result, Defendants are entitled to judgment as a matter of law.

## I.   PROCEDURAL BACKGROUND AND FACTS[1]

Plaintiff Mark Bolich took out student loans in approximately 2006. Doc. 97 at 1.  By 2018, five of the loans were serviced by Defendant Nelnet Servicing, LLC ("Nelnet"), while one loan was serviced by its parent company, Defendant Nelnet Diversified Solutions, LLC, d/b/a Great Lakes Educational Loan Services, Inc. ("Great Lakes"). *Id.* at 3.

Nelnet and Great Lakes are furnishers of information to credit reporting agencies ("CRAs"). *Id.* at 2.  They maintain automated processes for transmitting borrowers' payment information to CRAs monthly. *Id.*  The monthly report captures "a snapshot of the account as of the last day of the month." Doc. 82 at 19.  Defendants' corporate representative testified that their policy is to report accounts as delinquent only when they are 90 days or more past due. *Id.* at 26; Doc. 80-1 at 3.

Plaintiff did not make any payments on the five Nelnet loans between June and August 2018. Doc. 97 at 3.  On August 31, 2018, Nelnet reported to the CRAs that the accounts were 90 days or more past due. *Id.*  Nelnet did not report the accounts as delinquent for June or July. *Id.* at 4.  In September 2018, Plaintiff requested, and Nelnet granted, a hardship forbearance for the payments that had been due from June through August. *Id.* at 3; Doc. 80-1 at 47-51.  The forbearance brought the accounts

---

[1] The Court has determined the facts, which are undisputed unless otherwise noted, based on the parties' submissions, including declarations and exhibits, as well as the parties' joint Statement of Undisputed Facts (Doc. 97).  For purposes of summary judgment, the Court considers the facts in the light most favorable to the non-moving party, as required by Fed. R. Civ. P. 56.

current as of the date it was processed, meaning that the past-due amount was cleared, and Plaintiff was only responsible for making monthly payments going forward. Doc. 97 at 3; Doc. 82 at 41-42.   The forbearance agreement did not include any representations or promises with respect to credit reporting for the delinquent or forbearance periods. Doc. 80-1 at 30.   After the forbearance took effect, Nelnet's records listed the accounts as being in forbearance status from June 2 to September 1, 2018. Doc. 80-1 at 47-51.   However, Nelnet continued furnishing information to the CRAs that the accounts' status for the month of August 2018 was 90 days past due. Doc. 97 at 3.

Defendants' corporate representative testified that their company policy is to continue reporting a delinquency irrespective of a subsequent forbearance; they will not retroactively change a past due report for an account that was in repayment status at the time of the delinquency. Doc. 82 at 31-33.   Defendants have the technical capability of retroactively changing a past due report or adding a note that indicates a payment was not required for a given month. *See id.* at 30-40.   However, their representative testified that the written policies providing for that type of change apply only in limited circumstances, such as an in-school deferment or a natural disaster forbearance. *Id.* at 32, 33, 35, 37-38.

With respect to the Great Lakes loan, Plaintiff did not timely make all required payments between February 2018 and December 2019. Doc. 97 at 4.   His account was not in forbearance at any time during this period. *Id.*   Great Lakes reported Plaintiff's account as zero days past due in April 2019, 90 days past due in May, 120 days past

due in June, 90 days past due in July, 120 days past due in August, and zero days past due in September. *Id.* Defendants' corporate representative testified that Plaintiff made a payment in July 2019 that cured part of the arrearage and brought the past-due balance back to 90 days instead of 120. Doc. 81 at 6, 90. He made another payment in September 2019 that brought the past-due balance below 90 days, and then it remained below that threshold. *Id.* Plaintiff paid off all his student loans in full in August 2020. *Id.*

In 2021, Plaintiff initiated a dispute with the CRAs regarding Defendants' reporting of the Nelnet and Great Lakes loans as past due in August 2018 and May through August 2019, respectively. Doc. 97 at 2-3. After performing an investigation, Defendants maintained that their reporting was accurate and declined to make any changes. *Id.* at 3.

Plaintiff initiated the instant FCRA action on April 14, 2021. Doc. 1. Initially, he alleged FCRA violations by all three CRAs and another furnisher, in addition to Defendants, but those claims subsequently settled. *See id.*; Docs. 61, 63, 64, 85. The only remaining claim of the Amended Complaint is Count V, which is brought against Nelnet and Great Lakes. In this count, Plaintiff alleges that the Defendants willfully or negligently furnished incorrect or incomplete information to the CRAs, and failed to conduct a reasonable investigation of his disputes. Doc. 42 ¶ 103. He alleges that they inaccurately reported that the accounts were late during the disputed months despite knowing that all six loans were in forbearance at the time. *Id.* ¶ 105. Plaintiff also alleges that Great Lakes "falsely and inaccurately reported an illogical

delinquency progression" of 90-120-90-120 days past due between May and August 2019. Doc. 42 ¶¶ 106, 108.  The Defendants now move for summary judgment as to Count V. Doc. 79.

## II.   LEGAL STANDARD

Summary judgment is appropriate only when the court is satisfied that "there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law" after reviewing the "pleadings, the discovery and disclosure materials on file, and any affidavits[.]" Fed. R. Civ. P. 56(c)(2).  In determining whether a genuine issue of material fact exists, the Court must consider all the evidence in the light most favorable to the nonmoving party. *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1164 (11th Cir. 2003).  Issues of fact are "genuine only if a reasonable jury, considering the evidence presented, could find for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  A fact is "material" if it may affect the outcome of the suit under governing law.  *Id.*

The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986); *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004).  That burden can be discharged if the moving party can show the court that there is "an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.  "Only when that burden has

been met does the burden shift to the non-moving party." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

"[I]n order to survive summary judgment, the nonmoving party must set forth specific facts showing there is a genuine issue for trial." *Johnson v. New Destiny Christian Ctr. Church, Inc.*, 826 F. App'x 766, 770 (11th Cir. 2020) (citing *Anderson*, 477 U.S. at 249-50). "[U]nsupported 'conclusory allegations' do not suffice." *Middlebrooks v. Sacor Fin., Inc.*, 775 F. App'x 594, 596 (11th Cir. 2019). Likewise, "[a] 'mere existence of a scintilla of evidence' cannot suffice to create a genuine issue of material fact." *Johnson*, 826 F. App'x at 770 (quoting *Anderson*, 477 U.S. at 252).

## III.   DISCUSSION

Defendants argue that they are entitled to summary judgment because Plaintiff has failed to establish that the information they furnished to the CRAs was inaccurate, which is a threshold requirement for a claim that a furnisher's investigation into a dispute was unreasonable. Doc. 79. In opposition, Plaintiff argues that genuine issues of fact exist as to whether the reporting was inaccurate, incomplete, or misleading, and whether Defendants' investigation was reasonable. Doc. 101.

### A. Furnishers' Obligations Under the FCRA

The FCRA imposes certain obligations on credit reporting agencies ("CRAs") and furnishers of information to them. *Felts v. Wells Fargo Bank, N.A.*, 893 F.3d 1305, 1312 (11th Cir. 2018). Furnishers are required to report accurate information to CRAs. 15 U.S.C. § 1681s-2(a). They must also conduct a reasonable investigation of

any dispute that is lodged by a consumer regarding the information they furnish. *Id.* § 1681s-2(b).   Although a private right of action exists only with respect to the reasonableness of their investigation, *id.*, the plaintiff must also take on the accuracy requirement:

> [A] plaintiff asserting a claim against a furnisher for failure to conduct a reasonable investigation cannot prevail on the claim without demonstrating that *had* the furnisher conducted a reasonable investigation, the result would have been different; *i.e.*, that the furnisher would have discovered that the information it reported was inaccurate or incomplete, triggering the furnisher's obligation to correct the information.   Absent that showing, a plaintiff's claim against a furnisher necessarily fails[.]

893 F.3d at 1313.   That the reported information was inaccurate or incomplete is a "threshold requirement" of an FCRA claim against a furnisher. *Id.*

### 1. Accuracy

In *Felts*, the Eleventh Circuit held that a creditor-furnisher was entitled to judgment as a matter of law because the undisputed facts did not establish the threshold requirement of inaccuracy. 893 F.3d at 1318.   The plaintiff had entered into an unemployment forbearance that allowed her to make substantially reduced payments on her mortgage, in return for which the lender agreed not to foreclose on her home. *Id.* at 1309-10.   After successfully making the reduced payments, she became current once she found a new job and soon paid off the entire loan balance. *Id.* at 1310.   However, the creditor reported her status as "past due" for the months in which she paid the reduced amount, while also noting that she was paying under a partial payment agreement. *Id.* at 1310, 1318.   The Eleventh Circuit concluded that the past

due label was not inaccurate, because the forbearance agreement did not modify the terms of the mortgage note and the plaintiff conceded she was not making the payments that the note required. *Id.* at 1314.  Her "apparent compliance with the terms of a second, separate agreement," the forbearance, was irrelevant to the information the creditor was reporting—her compliance with the terms of the mortgage note. *Id.* The plaintiff was, in fact, past due and delinquent on her obligations under the note, irrespective of her partial payments. *Id.* at 1315.  As a result, the reported information was not inaccurate. *Id.*; *see also Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1159 (11th Cir. 1991) (finding that a negative notation in the past credit history section was not inaccurate where "it is uncontroverted that this notation accurately reflected the status of the account at [the time it was reported]," even though the furnisher eventually changed the reporting under the threat of litigation).

In *Porter v. Experian Info. Servs., Inc.*, No. 1:21-cv-453, 2021 WL 5068262, *9-10 (N.D. Ga. Oct. 30, 2021), *report and recommendation adopted by* 2022 WL 887288 (Jan. 27, 2022), the court found that reports that the plaintiff missed payments on his student loans in certain months were not inaccurate even though a forbearance subsequently covered those months.  The court highlighted that the forbearance was only granted after the payments were missed and the missed payments were reported to the CRAs, which meant that his loans were not "in forbearance" at the time. *Id.* at *10, citing *Gissler v. Pa. Higher Educ. Assistance Agency*, No. 16-cv-1673, 20217 WL 4297344, *4-5 (D. Colo. Sept. 28, 2017) (plaintiff failed to show that subsequent forbearances have a "legal effect of re-writing the past" or that defendant "had a legal obligation, after

granting plaintiff a forbearance, not to continue reporting the historical fact that plaintiff did not make certain loan payments"); *Hafez v. Equifax Info. Servcs., LLC*, No. 20-cv-9019, 2021 WL 1589459 (D.N.J. April 23, 2021) ("furnishers need not report accounts as 'current' if they were delinquent *before* an accommodation under the FCRA") (emphasis in original); *see also Lichtman v. Chase Bank USA, N.A.*, No. 18-cv-10960, 2020 WL 1989486, *5-6 (S.D.N.Y. April 27, 2020) (past-due reports from months prior to plaintiff's entering into a payment agreement were not inaccurate, because expunging her previously-missed payments was not part of the bargain and no legal or contractual obstacle existed to the creditor reporting a historical fact that she had missed payments); *Friedman v. Navient Solutions, LLC*, No. 1:19-cv-83, 2019 WL 4751870, *4 (N.D. Ga. Aug. 27, 2019) (granting summary judgment to defense because plaintiff failed to show any inaccuracies where his forbearance requests were submitted and approved after the loans became delinquent).

In contrast, the Eleventh Circuit found that a report was factually inaccurate as a matter of law where a reported debt was discharged by a bankruptcy. *Losch v. Nationstar Mortg. LLC*, 995 F.3d 937, 945 (11th Cir. 2021).  Although a bankruptcy discharge does not expunge a debt, the bankruptcy rendered inaccurate the report's information that the consumer owed a balance that remained past due. *Id.*, citing *Midland Funding, LLC v. Johnson*, 581 U.S. 224, 233 (2017) (noting that a bankruptcy discharge generally "means that the debt…will not remain on a credit report"); *see also Benjamin v. Experian Info. Solutions, Inc.*, 561 F.Supp.3d 1330, 1355 (N.D. Ga. 2021) (report that continued to list an account that was discharged in bankruptcy was

factually inaccurate, because bankruptcy provides a general discharge from liabilities and an injunction against collection of the discharged debts); *but see* Doc. 101 at 8-9, citing *Nissou-Rabban v. Cap. One Bank (USA), N.A.*, 285 F.Supp.3d 1136, 1150 (S.D. Cal. 2018) (report containing historical information about past debt was not inaccurate, but it was incomplete because it did not indicate the debt was subsequently discharged in bankruptcy).

### 2. *Materially Misleading*

Even if the information a furnisher provides is technically accurate, it cannot be materially misleading. CRAs are required to achieve "maximum possible accuracy," *see* 15 U.S.C. 1681e(b), which the Eleventh Circuit has held means that "information must be factually true and also unlikely to lead to a misunderstanding." *Erickson v. First Advantage Background Servcs. Corp.*, 981 F.3d 1246, 1252 (11th Cir. 2020). Information is not maximally accurate if it is so misleading that it is objectively likely to cause the intended user to take adverse action against its subject. *Id.* Although the Eleventh Circuit has not held that this standard also applies to furnishers, some district courts have found that it does. *See Abukhodeir v. AmeriHome Mort. Co., LLC*, No. 8:21-cv-563, 2021 WL 3510814, *4 (M.D. Fla. Aug. 10, 2021) (Jung, J.) ("Courts applying [15 U.S.C. § 1681s-2] against furnishers have often looked to suits brought against CRAs under § 1681e(b) to define accuracy").

In *Abukhodeir*, for example, the plaintiffs alleged that they had enrolled in their lender's autopay program and had sufficient funds to make their payments, yet the

lender inexplicably failed to process the payments. 2021 WL 3510814 at *4.  The court found the allegations were sufficient to survive a motion to dismiss, because they adequately pleaded that the lender's reporting of late payments, while technically accurate, created the false impression that the plaintiffs were responsible for them. *Id.*; *see also Bush v. Roundpoint Mortgage Servicing Corp.*, 122 F.Supp.3d 1347 (M.D. Fla. 2015) (Bucklew, J.) (plaintiffs adequately stated an FCRA claim when they alleged that the furnisher failed to add the material information that a late payment was the fault of a third party title company, not the plaintiffs); *Calhoun v. Certegy Check Servs., Inc.*, No. 8:14-cv-1020, 2014 WL 4146886, *3 (M.D. Fla. Aug. 20, 2014) (Whittemore, J.) (same, where plaintiff disputed the accuracy of reported debt but furnisher failed to add notation that it was disputed); *Gissler*, 2017 WL 4297344 at *5 (a reasonable jury could find that marking an account as "previously disputed" after marking it as "disputed," where plaintiff continued to dispute its accuracy, was misleading). Similarly, in *Klein v. Navient Sols., LLC*, No. 8:20-cv-876, 2020 WL 3414990, *4 (M.D. Fla. June 22, 2020) (Bucklew, J.), the court found that the plaintiff adequately stated a claim against a furnisher when she alleged that the report failed to include a status remark of "paying under a partial payment agreement," which rendered an accurate past due notation materially misleading.

In *Felts*, the Eleventh Circuit rejected the plaintiff's argument that reporting a past due status even though she was making every payment required by her forbearance agreement was misleading in that it "created a 'wildly inaccurate' picture of her creditworthiness." 893 F.3d at 1318.  Rather, the court found it was neither

misleading nor a material omission for the creditor to report that she was not making payments under the mortgage note, "particularly in light of [the creditor's] additional statement that she was paying under a partial payment agreement." *Id.* at 1318-19. The court observed that the plaintiff received the agreed-upon benefit of making partial payments because she did not lose her home. *Id.* at 1319. Moreover, if the furnisher had reported her payments as full and timely, as she preferred, her credit report "may have been misleading to prospective lenders," for whom her "inability to meet her payment obligations under the Note is relevant information[.]" *Id.* The *Cahlin* court similarly noted that there is no duty under the FCRA "to report only that information which is favorable or beneficial to the consumer"; "[i]ndeed, the very economic purpose for credit reporting companies would be significantly vitiated if they shaded every credit history in their file in the best possible light for the consumer." 936 F.2d at 1158. The court concluded that the standard of accuracy "should be interpreted in an evenhanded manner toward the interests of both consumers and potential creditors in fair and accurate reporting." *Id.*

Applying these principles, district courts have concluded that information is neither inaccurate nor misleading if, when viewed in its entirety and context, it does not create an incorrect impression. In *Weeks v. Equifax Info. Servcs., LLC*, No. 8:21-cv-2384, 2022 WL 685665, *4 (M.D. Fla. March 8, 2022) (Covington, J.), the court found that the "only reasonable reading" of the plaintiff's credit report was the correct one: that an account had been delinquent in a previous month, but that it was currently closed. The court also found that the notation that there was a "maximum

delinquency of 30 days" was neither incorrect nor misleading, even though the account was paid only a few days late, because the notation indicated that the account was anywhere from 0 to 30 days late. *Id.* at *5.  Likewise, in *Williams v. Nelnet Bus. Sols., Inc.*, No. 1:20cv1063, 2021 WL 2589022, *3-4 (N.D. Ga. Jan. 14, 2021), *report and recommendation adopted by* 2021 WL 2587973 (March 2, 2021), the court found that the inclusion of historical information about the plaintiff's payment history in the account status field—that the account was 120-149 days late—was neither inaccurate nor misleading where the report also showed the accounts were closed with a zero-dollar balance.  The furnisher "was not required to provide information in the manner most favorable to Plaintiff and fulfilled its duty by providing objectively accurate information." *Id.* at *4, quoting *Baker v. Pinnacle Credit Union*, No. 1:19-cv-3455, 2020 WL 4696713, *4 (N.D. Ga. Aug. 13, 2020).

## B. Defendants Are Entitled to Judgment as a Matter of Law

The threshold question in dispute in the parties' summary judgment briefing is whether Defendants' reporting was inaccurate, incomplete, or materially misleading. Plaintiff also argues that questions of fact exist as to whether Defendants conducted a reasonable investigation.  However, the Court will not review the reasonableness of Defendants' investigation unless it resolves the threshold question of accuracy in Plaintiff's favor. *See Felts*, 893 F.3d at 1313.  "If the undisputed facts indicate that [Plaintiff] has not met this threshold requirement, [Defendants will be] entitled to judgment as a matter of law." *Id.*

The accuracy of each type of account will be discussed in turn.

### 1. *The Nelnet Loans*

Plaintiff first alleges that the August 2018 reports of 90 days past due for his five Nelnet loans were inaccurate or materially misleading in light of his forbearance, which applied retroactively to August.  Defendants contend that the reports accurately reflect the historical fact that his account was 90 days past due as of the reporting date in August, a fact that Plaintiff concedes. Doc. 79 at 13-15.  Defendants further assert that the forbearance Plaintiff obtained in September did not include an agreement to change past reporting. *Id.*  In opposition to the motion for summary judgment, Plaintiff primarily argues that Nelnet's testimony was inconsistent regarding the effect of a forbearance, and that its policies "require" alteration of a prior delinquency report after a forbearance has been applied. Doc. 101 at 5-6, 9-14.  He contends that Nelnet's records demonstrate that the forbearance period covered August 2018, and its corporate representative testified that no payment was required for that month once the forbearance went into effect. *Id.* at 6-8.  Moreover, Plaintiff draws support from the fact that Nelnet did not report his account as delinquent for June and July 2018, the other months covered by the forbearance, during which he would have been more than 30 and 60 days past due. *Id.* at 7.  In any event, he argues that the reporting was materially incomplete because it lacked context in the form of an explanatory note that the month was covered by a forbearance agreement. *Id.* at 9.

In reply, Defendants argue that its representative's testimony was taken out of context, because he clearly and repeatedly confirmed the Nelnet policy that applied to Plaintiff's situation: that Nelnet would not erase a delinquency report that was

accurate at the time because of a hardship forbearance that was obtained after the payment was due and the report was made. Doc. 104 at 5-7. Defendants assert that no written policy requires it to act otherwise, contrary to Plaintiff's characterizations. *Id.* at 7-9.[2]

The Court concludes that, as a matter of law, the Nelnet reports were accurate. Plaintiff concedes that the report that his account was more than 90 days past due on the reporting date in August 2018 was factually accurate. Although he argues that the subsequent forbearance required Nelnet to change the reporting, the forbearance was requested and granted only after he had missed the payments, and it was not active at the time of the reporting. Just as in *Porter* and *Friedman*, it does not render the past-due report inaccurate. *See* 2021 WL 5068262 at *9-10; 2019 WL 4751870 at *4. Moreover, there is no conflict in the record: as Nelnet's representative explained, applying the forbearance to the summer 2018 payments meant only that Plaintiff was not responsible for making those payments going forward. In other words, his past-due balance reset to zero once the forbearance went into effect, rather than continuing to show three months' worth of overdue balance. *See* Doc. 82 at 41-42. It did not change the historical fact that in August 2018 Plaintiff was required to make a

---

[2] Defendants also argue that its motion for summary judgment is due to be granted because Plaintiff's response in opposition violates this Court's Case Management and Scheduling Order, which requires that the non-movant specify the material facts that demonstrate a genuine issue for trial, with citations to the record. Doc. 104 at 2. This argument is without merit. The argument section of Plaintiff's response in opposition identifies and cites specific pieces of evidence in support of his claims that trial issues exist. Plaintiff has substantially complied with the Order.

payment, and he did not do so.  Plaintiff does not assert that expunging the past-due amount was part of the bargain he struck with Nelnet when entering into the forbearance agreement. *See Lichtman*, 2020 WL 1989486 at \*5-6.  Nor do Nelnet's written policies *require* such a retroactive change, although the policies show it is technically possible within their computer system.[3]  Doc. 82 at 30-42.  Plaintiff has not identified any fact in the record establishing that the forbearance had a "legal effect of re-writing the past" or that Nelnet "had a legal obligation…not to continue reporting the historical fact" that he did not make that payment. *See Gissler*, 2017 WL 4297344 at \*4-5.  Just as the *Felts* and *Cahlin* courts observed, it would be misleading to prospective lenders to erase the historical fact that Plaintiff was unable to meet his payment obligations, vitiating the "very economic purpose for credit reporting companies." *See* 893 F.3d at 1319; 936 F.2d at 1158.

Nor does the fact that Nelnet chose not to report Plaintiff's 30- and 60-day past-due status create a genuine issue of fact as to the report's accuracy. *Cf.* Doc. 101 at 6-7.  The corporate representative's testimony that Nelnet's and Great Lakes' policy is not to report a delinquency under 90 days is unrefuted in the record, and is corroborated by the evidence that Defendants followed that policy for Plaintiff on

---

[3] Plaintiff has not identified any evidence to refute or discredit the testimony, which corresponds with the text of the policies, that a retroactive change is to be made only in limited circumstances, such as when the account should not have been in repayment status in the first place or when the borrower was granted a natural disaster deferment. *See* Doc. 82 at 32, 33, 35, 37-38. These scenarios are logically distinct from the circumstance in which a borrower admittedly falls behind but is granted a subsequent forbearance that zeroes out a past-due balance.

more than one occasion.  To the extent Plaintiff argues it is materially misleading not to report that he was also 30 and 60 days past due, he has failed to identify any reason the omission would be likely to have an adverse effect on him. *See Erickson*, 981 F.3d 1252.  In any event, the most reasonable interpretation of a credit report jumping from "ok" to "90 days past due" is that the furnisher did not report the prior months' delinquency—which is correct in Plaintiff's case, and therefore not misleading.  No reasonable factfinder could conclude that the lack of 30- and 60-day reporting contributed to an inaccuracy.

Plaintiff argues, in the alternative, that Nelnet's reporting was materially incomplete because it failed to include a notation indicating that he received a forbearance for the months that were past due. Doc. 101 at 8-9, citing *Felts*, 893 F.3d at 1318-19 (holding it was not misleading for creditor to report plaintiff's past delinquencies, "particularly in light of [its] additional statement that she was paying under a partial payment agreement.").  Defendants do not respond to this argument.

The Court disagrees that the August 2018 report was incomplete without an explanatory note.  Unlike in the cases in which the court found an explanatory note was needed to clear up a material omission, here there is no likelihood of an inaccurate impression without it.  Contrary to the plaintiffs in *Felts* and *Klein*, Plaintiff was not making timely payments under a separate payment plan at the time of the past-due report. *See id.*; 2020 WL 3414990 at *4.  Nor was it the fault of a third party that he missed the August 2018 payment, as in *Bush* and *Abukhodeir*. *See* 122 F.Supp.3d 1347; 2021 WL 3510814 at *4.  In fact, the note Plaintiff seeks—that he received a

forbearance to cover the past-due month—might be misleading to prospective creditors, because it might be interpreted to mean he did not actually owe the payment at the time it was due.[4]  Just as in *Felts*, it is relevant information to prospective creditors that he owed and missed the August 2018 payment, irrespective of Nelnet's decision to clear the past-due amounts when it granted him the subsequent forbearance. *See* 893 F.3d at 1318.  The report accurately reflects Plaintiff's payment history, and it is not likely to lead to any *mis*understanding that is adverse to him.[5]  As a matter of law, it is not incomplete or misleading.

Plaintiff has not identified any fact in the record establishing that the information Nelnet reported was inaccurate, incomplete, or misleading.  Because the undisputed facts indicate that Plaintiff has not met his threshold requirement, even viewed in the light most favorable to Plaintiff, Nelnet is entitled to judgment as a matter of law. *See Felts*, 893 F.3d at 1313.

---

[4] If the explanatory note was detailed enough to avoid that misleading impression, it would likely indicate that the forbearance forgave the past-due amount—information that could have a more adverse effect on Plaintiff than if the creditor believed he had resolved the delinquency on his own by making payments.

[5] Plaintiff attempts to equate his situation, where a past-due balance was cleared by a subsequent forbearance, with a debt that was discharged in bankruptcy. *See* Doc. 101 at 8-10. He relies on a case from a district court in California holding that a credit report was misleadingly incomplete because it did not note that a reported debt was discharged in bankruptcy. *Id.*, citing *Nissou-Rabban*, 285 F.Supp.3d at 1150.  As noted *supra*, the Eleventh Circuit has found it is inaccurate as a matter of law to continue reporting a debt that was discharged in bankruptcy. *See Losch*, 995 F.3d at 945.  But Plaintiff offers no authority for his contention that the unique circumstance of bankruptcy, which provides a formal discharge from all liabilities, is equivalent to an individual creditor's decision to clear a past-due balance in a forbearance.  For the reasons discussed, the Court does not find that the lack of a notation rendered the August 2018 report incomplete or inaccurate.

### 2. *The Great Lakes Loan*

With respect to the Great Lakes loan, Plaintiff challenges the monthly reports for May through August 2019, which indicate that he was 90, 120, 90, and 120 days past due.  Defendants argue that they are entitled to summary judgment because the reports accurately reflected Plaintiff's payment status on the reporting date, the final day of each month, which Plaintiff does not dispute. Doc. 79 at 15-16.  The number fluctuated because he made partial payments to reduce the past due balance before becoming current in September. *Id.* at 8.  Plaintiff concedes that the reports were technically accurate, but argues they were materially misleading because they failed to reflect the fact that he was only more than 90 or 120 days past due for less than a day out of each month. Doc. 101 at 17-20.  He explains that "the heart of [his] misleading claim [is] that he was not in fact 90 or 120 days late for the entire given month." *Id.* at 18.

As an initial matter, the Amended Complaint does not allege that the reporting of the Great Lakes accounts was misleading because he was only 90 or 120 days late for one day of each month.  Rather, it alleges that the reporting was inaccurate because the account was in forbearance at the time—a claim that Plaintiff now appears to have abandoned—and because it contained an "illogical delinquency progression." Doc. 42 ¶¶ 38-39, 43-44, 106, 108.  The allegation of an "illogical delinquency progression" does not encapsulate Plaintiff's current, distinct claim that the reported *duration* of the delinquency was misleading.  He cannot defeat summary judgment based on an allegation that he did not plead. *See Gilmour v. Gates, McDonald and Co.*, 382 F.3d 1312,

1315 (11th Cir. 2004) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment."); *Klein v. Navient Sols., LLC*, No. 8:20-cv-876, 2020 WL 3414990, *5 n.2 (M.D. Fla. June 22, 2020) (declining to consider a second reason the reported information was allegedly misleading, because this reason was not identified in the amended complaint).

Even if the Court considered the merits of Plaintiff's new claim about the duration of delinquency, however, it would find that the Great Lakes reporting was not materially misleading as a matter of law, because the reported information was not likely to lead to a misunderstanding. *See Erickson*, 981 F.3d at 1252. As in *Weeks* and *Williams*, the "only reasonable reading" of Plaintiff's credit report is the correct one: that his account was at least 90 or 120 days past due on the reporting date of each identified month. *See* 2022 WL 685665 at *4; 2021 WL 2589022 at *3-4. The report does not represent that the status applied to every day in the month, contrary to Plaintiff's interpretation. Doc. 101 at 19-20. And the fact that Great Lakes reported the status only on the reporting date worked in Plaintiff's favor in April 2019, for example, during which Plaintiff acknowledges his account was more than 90 days past due, but which was reported as "ok" because he made a partial payment before the reporting date that brought the account down to 59 days past due. *See id.* at 19; Doc. 104 at 10.[6] Plaintiff has not identified any requirement that a furnisher provide greater

---

[6] Plaintiff's argument that the debt collection letters contradict Great Lakes' position and create a genuine issue of fact is unavailing. Doc. 101 at 18-19. As demonstrated in Defendants' reply, the letters are not in dispute with the reported information. Doc. 104 at 10.

specificity than a borrower's status on a monthly reporting date.  He might prefer, for example, a daily report that would demonstrate that his 90- and 120-day delinquencies lasted only one day of the month.  But Great Lakes "was not required to provide information in the manner most favorable to Plaintiff[.]" *Baker v. Pinnacle Credit Union*, 2020 WL 4696713 at *4.  Viewing the report objectively and in its entirety, its accurate report of 90- and 120-day delinquencies was not materially misleading.

Finally, to the extent Plaintiff still relies on his initial theory that the 90-120-90-120 delinquency progression was "illogical," the Court finds that it was not materially misleading.  As described *supra*, it was not misleading for Great Lakes not to report that he was 30 or 60 days late in the preceding months.  And the "amount past due" fields in the TransUnion report, which read "$0, $175, $278, $175, $278, and $0," make clear why the progression appeared to fluctuate: because Plaintiff made partial payments during some of those months before resolving his delinquency. Doc. 90-1 at 7.  In any event, even if the reported progression could be considered confusing, Plaintiff has not identified any way in which the alleged confusion would be adverse to him, nor does he dispute its accuracy.  The delinquency progression is not materially misleading.   Defendant is entitled to summary judgment as to the Great Lakes account.

Accordingly, it is **ORDERED**:

1.  Defendants Nelnet Servicing, LLC and Nelnet Diversified Solutions, LLC's Motion for Summary Judgment (Doc. 79) is GRANTED.  As a matter of law, Defendants are entitled to summary judgment as to Count V, the sole

remaining count of the Amended Complaint. No genuine issues of material

fact exist as Count V of the Amended Complaint.

2. The Clerk is directed to enter judgment in favor of Defendants, NELNET

SERVICING, LLC and NELNET DIVERSIFIED SOLUTIONS, LLC,

terminate any pending motions, and close this case.

**DONE** and **ORDERED** in Tampa, Florida on July 12, 2023.

*Charlene Edwards Honeywell*

Charlene Edwards Honeywell
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties